Good afternoon, your honors. May it please the court. Jason Carr, appearing on behalf of Appellate Salvador Gonzalez, I intend, with leave of the court, to reserve a minute or two of my time for rebuttal. The issue in this case involves the line of demarcation between the base offense level, or interference with a flight crew, and the nine-level specific offense characteristic that is intended to acts that endanger, recklessly endanger, an aircraft or airport. The crux of the contention here comes down to what is that line of demarcation? We know that an element of the crime, of a violation of 49 U.S. Code 46504, is that you have to interfere with flight attendant or flight crew functions. There has to be some kind of impediment to the flight crew function, to the flight crew's ability to respond to a delay or to deal with a situation on the aircraft. So the idea that the government attempts to proffer, and which is hinted at in the United States, in this Court's decision in Naghani, is that by merely interfering with flight crew function alone, that that constitutes an act that recklessly endangers the aircraft. Well, let me ask you this question, if we can get right to it. There was some suggestion that he was running around hysterically. Whether he mentioned, I have a bomb, or I could get a bomb, or there was a bomb, he used the word bomb. And this is what is of greatest concern. I'd like you to address it, because I'm going to ask opposing counsel to do the same thing. There is a suggestion that there was grave concern, because he was headed toward the emergency exit, and there was grave concern that if he got toward that emergency exit, because he wanted the plane to land, he was making every effort to get it to land, that he was going to pull that emergency exit and blow that door open. Now, whether that's possible or it isn't possible, I don't know. But they certainly thought it was possible, because everybody was hysterical on the plane, apparently. And isn't that endangering the aircraft, having people running around the aircraft like that, and people afraid somebody is going to pull the emergency exit latch? It seems to me like that's pretty dangerous. The first point I would make is that if you look at the excerpt from record, page 112, where there's testimony regarding heading towards the emergency doors located, what the stewardesses of the DCOA say is that some of the passengers speculated we thought he was going to open the door because the ball of fighting or chaos, as it was testified to, was heading toward the door. Well, that's where he was heading, and they were following him, and he was heading toward it. I got this impression he was kind of like a guy carrying a football with three tacklers on him, and he's making progress as they're dragging behind him. That could be one way to characterize the testimony. What the stewardess specifically said was that I was seeing this ball of fighting, this ball of just fighting making its way to the emergency door, emergency exit, where legs and arms were flying and so on and so forth. So some of the passengers apparently speculated that he was moving towards the emergency door. Whether he was or not, there's no factual finding in this record to that effect. We do know — What about the other issue? If you take this, that just upsetting the flight attendants and getting them all riled up or interfering with them is not sufficient and you need something more, the statements about the bomb and taking the plane down, those are the ones that bother me and make me wonder, well, isn't that in the nature of flying an aircraft, of course, one doesn't just bring it down in any particular location, wouldn't that be placing the aircraft in danger, a threat that you're going to bring it down, and the fact that the pilot might have to land prematurely? There is a district court case cited by the government, and the government does contend that the idea of a threat alone could endanger the aircraft, the idea that a threat alone could endanger this aircraft is out there and it may in fact trigger the enhancement. Accepting that without conceding that to be the case, we have to look at, in this case, whether or not the threat, there's a causal connection between the threat and an actual endangerment of the aircraft. And when I say that, I mean, look at the mechanics, the actual structural integrity of the plane, some kind of factual development here and factual finding by clear and convincing evidence that the aircraft itself was in danger. Did the district court make any finding on that? In other words, that there was some reason to suspect he had a bomb or somebody believed he had a bomb or had access to a bomb or anything? Did the sentencing judge make any finding at all about a bomb? I would say that my intention is no, Your Honor, that the sentencing findings begin on page 172 of the excerpt of record. And my contention is there are no specific factual findings relevant to the issue of whether this specific officer On the endangerment, you mean at all? Yes, Your Honor. I will now just briefly segue back to a previous question. In the excerpt of record 125, one of the flight attendant crew members testifies that the emergency room door cannot be opened in mid-flight, which would make sense given the pressurization of the cabin. Back to the question of a threat, is a threat enough alone sufficient? It's an interesting question. And once again, that comes down, not once again, but it does come into the issue of underlying all this, whether or not Nakani settled this question. And Nakani doesn't grapple with this issue of a threat. In my opinion, Nakani doesn't deal with whether or not you have to prove endangerment to the aircraft at all. But it is an interesting question. And in this case, if you have a threat in the context in which it was made here, I don't know whether a reasonable person would believe whether or not he had a bomb or not. The testimony differs. Some of the testimonies, he said, what do I have to say to make this airplane land? What do I have to say to make this airplane land? Do I have to say I have a bomb? The question is, is there any actual endangerment to the aircraft when there is no bomb? Can a numerical threat, a threat that doesn't exist, that has no validity, can that actually endanger the aircraft? Well, we've held that a situation where somebody goes into a bank and says, I have a gun is sufficient to get them the enhancement because the tellers and everybody else is entitled to take them at their word even if they don't have a gun or if they have a toy gun. And the reason for that is that there are all kinds of consequences that can flow from that. For instance, saying I have a gun can cause a security guard or a police officer to pull a gun and fire, maybe miss the bank robber and hit an innocent third party. Now, in this case, you have a guy who says, do I have to say I have a bomb? And then he goes up to the overhead bin to try to get a bag down. And people obviously believed that there was a reasonable possibility that this man had a bomb. My concern is this. You know, I think it's common knowledge and we're entitled to take consideration of common knowledge. Have you ever seen a map of what the skies over the United States look like with airplanes at any given time? Little white dots. There's so many little white dots that you can't even see the ground. And here you have a pilot who is supposed to be paying careful attention, flying this airplane, paying attention to all the instructions from the towers, watching out for other aircraft in the sky so we don't have a midair collision. And all of a sudden the pilots are terribly distracted because they've got a riot going on in the back of the airplane. Doesn't that endanger the aircraft? Your Honor, it could. And I would submit that if there was direct evidence in this record that cockpit crew function was impaired by these actions, then the government would have a much stronger case. Well, they said they were going to captain hold the flight attendant. We're going to have to turn around. We're trying to go back, turn around. Yeah, there was evidence. You know, I'm very concerned, the captain. So he's not continuing just flying on. He's making a change of course. To just understand your argument, you're saying that the government would then have to introduce evidence from the captain that says, okay, not only did I, were the flight attendants afraid, there was mass chaos on the airplane, and I was turning around and changing course, but you would need testimony to say that that present always presents some risk because you're not on your flight plan. You've got all these aircraft. So you're saying he would have needed, the government needs one more piece of evidence, basically? Right. The guideline is clear. Plain language does recklessly endanger the safety of the aircraft. They need to have actual factual elements put into the record that prove that this specific aircraft was endangered. And I will note that one of the government's strongest arguments, in my opinion, is the fact that the airplane was diverted. But if you have to ask the question then is, is that a statistically significant percentage of endangerment? The flight? Well, I mean, you're talking about a big jumbo jet who's got passengers up in arms, a possible bomb on the thing. I mean, even if he had a real bomb on there, would that be, but it wasn't going to actually go off, would that be enough in your view if he said, here, you want to see my bomb? This is your bomb, but it's actually not a real bomb. Would that be enough to invoke the guideline enhancement? Yes, it would. And why? Because whenever you bring a dangerous weapon, such as a bomb, or something that could, there is some chance that it could malfunction and explode and create a real breach to the whole of the aircraft, that's a significant risk. That is an endangerment. Oh, no, yeah, but. Okay. But now he says, I've got a bomb. I'm just not showing it to you. I've got a bomb. No, but the. No, yeah, but it's a real threat. If you see the bomb, you know there's a possibility it can go off. On the other hand, somebody, a 6-year-old kid says, I have a bomb. You probably, first of all, aren't taking it seriously. It's not a threat. Second, we know there's screening, so it's very unlikely a person can get a bomb on board a plane, right? So it's not likely to be believed without some indication that it's real. This idea of the hypothetical threat being enough is a fascinating question. My contention. The threat alone could be enough if they can prove that the reaction to the threat, impaired aircraft mechanical function, endangered the structural integrity of that aircraft. And I see I'm well on time, so thank you.   Good morning. May it please the Court. My name is Thomas Docherty. I'm an assistant United States attorney in the District of Nevada, and I represent the Government of the States. I'll begin by just trying to address some of the concerns raised by the Court in their questions to the defense. The guideline specifically addressed or contemplated in the situation that you just discussed, in other words, if the use or the threat is made of the use of a dangerous weapon, the guideline specifically mentions under specific offense characteristics that the offense should be increased by three levels. Which guideline are you talking about? The guideline 285.2B. Which says what? 282.5B1. It reads that if a firearm was discharged. Well, and farther down, Your Honor. If a dangerous weapon was used, was grandish. Or its use was threatened. Use was threatened. But that means there has to be a dangerous weapon whose use was threatened. I would argue. There's no dangerous weapon here. I would argue you're assuming a bad one. If I walk into a bank. I don't agree with the line of case that says if you say I have a gun and you don't have one, that means you get the armed enhancement? For bank robbery, it does, Your Honor. Even if I don't have a gun, if I walk into a bank and say I have a gun, I'm going to shoot you unless you fill up this bag with money, you get the dangerous weapon enhancement. And I would argue that this condition or this enhancement is analogous to that. In other words, if I walk onto a plane and I say I have a bomb and I'm going to use it, I would certainly seek that enhancement under this. You see, the problem is, you know, when you go aboard a plane, you've got to go through all the security screening. And how can you take that seriously when somebody says I have a bomb? It's different than you walk into a bank. If you had X-ray screening going into a bank, you know, it would be different, wouldn't it? Your Honor, not less than three months ago in London, their terrorists tried to take liquids which supposedly, had they been able to get them onto the plane, they could have mixed and created a combustible substance. And they weren't able to get it on? They weren't. But that's just it. They're continually looking. And that's the point. Because, you see, you have all this security screening. You can't get these things on the plane. So in other words, to me, a threat to rise to the level of endangerment has to be a realistic threat. It can't be an empty threat. My example, an 8-year-old kid goes up to a store and says I have a bomb. Is that endangerment? I believe it is, Your Honor, because that's exactly what happened in this case. I mean, passengers heard this defendant. Well, the passengers became hysterical, but that doesn't mean the plane was endangered because the passengers. That's what the testimony is, right? Some women got hysterical. But I would disagree, Your Honor, because it created this absolute pandemonium. Well, so, but that doesn't endanger the aircraft. That's the reason, you know, we have these doors to the cockpit now that are unreachable. That doesn't endanger the aircraft because there's a riot in the passenger compartment, does it? Yeah. I respectfully disagree, Your Honor. How does it endanger the aircraft? Your Honor, there's a reason why when you get on an airplane, you're supposed to stay in your seat. You're supposed to keep your seat. I understand that, but how does it endanger the aircraft? When there are a few ways. First, when you have individuals out of their seats, running around, banging against the walls, opening up bins, absolute pandemonium in the cabin. First, as Judge Ezra discussed, or I'm sorry, Judge McAllen, called into the cockpit and said we have a situation here. It took the responsibility, it took the time and attention away from the pilot, first off. How does that endanger the aircraft? Because flying an aircraft. What danger did it create to the aircraft? Your Honor, I would submit to you flying an aircraft is an incredibly complex. I understand that, but what is it? You're not answering my question. What is the danger that was created? How was it endangered? Because, Your Honor, every aircraft that was deployed by the Air Force had a responsibility to the safety of that aircraft. I know that, but look, look, that's the basic violation. You have to interfere with the performance of the flight crew, right? So that, by definition, you know, is a crime. You have to go beyond that to endanger the aircraft. How do you? Well, if I could argue, if I could give you one example, Your Honor. Obviously, Mr. Carr and I are from Las Vegas. We have a lot of interference of flight crew cases in Las Vegas because people tend to overindulge on their way to Las Vegas. And I would submit to you that we prosecute cases for interference with a flight crew where you have an intoxicated passenger who will roll out into the passenger air silence thing because they're so full drunk and they're detasting the efforts of the flight crew to have to take him up or deal with him, quote, interfere with their other duties. I would argue that does not rise to the level where it's endangered the safety of the aircraft, that individual has just conducted themselves in a manner which has interfered with their abilities. But, however, in this case, this is a situation where it's gone well beyond that, where you have someone who's created a situation which has created such a dangerous situation, I would argue, with passengers having to get out of their seats. Dangerous to whom or to what? Passengers. Right. Okay. It's a danger to passengers. Not to the aircraft. But that's not the same as an endangering the aircraft. Well, let me ask you on B-1. I mean, if this isn't an enhancement under B-1. This is an enhancement under A-2, correct? It is. It's, Your Honor, it's styled as a base defense level, in essence, not an enhancement. If it is found to have been recklessly endangered, then it's the base defense level as opposed to a two-level or nine-level. What I'm saying is you just quoted that portion relating to where you thought a bomb would fit into. Threaten. Like a wetten or a threat. Yes. So is it under that? I mean, is that what you're relying on? I'm sorry. I don't understand your question. Well, I mean, you're making some analogy that the bomb fits in there. Are you relying on that language, the B-1 language? That the bomb fits. Yeah. I mean, I'm trying to understand your argument. I thought you said bomb fits under the B-1 language. What you said was the use of a dangerous weapon was threatening, right? That's what you said. Yes, Your Honor. And the way you interpret it doesn't require that to actually be a dangerous weapon. And we can understand that. Let me finish my question. Sure. Or let me try to understand what you're saying. That's under subsection B. That gets you how many more points, right? Five levels more. We're talking about the increase under A. A. That's what I'm trying to. So he gets up to 18. Yes, ma'am. And I will let you know that I contemplated trying to seek that enhancement. No, but no, no. The question is, though, how does B, where it says if you use a dangerous weapon or threaten to use one, you get five more points, how does it help you with A about endangerment? It's a different – it's a different – it's a different increase. If I could, the – I contemplated in this case trying to seek that enhancement for the fact that he stated, I have a bomb. But, however, since he ultimately, he admitted during his plea colloquy, he would not admit that he said, quote, I have a bomb. He did admit to saying, what do I have to do to get this plane to land? Do I have to say I have a bomb? No, but you're not answering the question. As a matter of interpreting the guidelines, how does the fact that under subsection B you get five points if you threaten the use of a dangerous weapon, how does that increase help you to interpret the subsection A for recklessly endangering an aircraft? Because, Your Honor, I would argue that when you look at this guideline, it talks about or it's structured in a way for a graduation of conduct. In other words, if you have someone who merely, as I talked about, gets drunk, falls into the aisle, has to be pulled out and becomes belligerent while they're trying to put the passenger back in the plane, that would arguably be a nine. If you have someone who, as I would argue in this case, goes well beyond that, where he gets out of his seat, has to create a physical altercation, physically harms others, creates the whole crew to basically pay attention to his conduct, I would argue falls within 18. But if the other one, if you're graduating up, I mean, here's kind of the irony. If you had this threat of a weapon or something dangerous, that would go plus 5, is that correct? No, Your Honor. If you use it, it would be a 12. Oh, 24. Because it says if it's less than a 24, increase it to 24. Okay. So then the next step is if I say I have a weapon, I'm threatening to use it, it goes to 24. Then if you can prove that intentionally endangering the safety of the aircraft, it goes to a 30. Right. So in other words, I would argue that, in essence, you have a guideline which tries to deal with these different situations that occur on air. But the only one we are really looking at, because it's the one he got, is whether you endangered the aircraft. Well, and I would argue that that is what it says, endangering the aircraft. What is that about? I mean, it's not talking about, I would argue, it's more than just the physical aircraft. It's the people inside. In other words, if it says airport aircraft, it's nonsensical to think that someone could walk up to the outside of San Francisco Airport and start banging on the wall with a hammer, endangering the integral safety of the airport, and then have that enhancement applied. But yet someone also walk up in front of the airport, blow up a bomb, injure people, but yet not do any structural damage to the airport, but yet then it wouldn't apply? You see what I mean? No, I understand what you're saying. Like, if you say in the middle of an airport, I've got a bomb, and then everybody goes, oh, my God, they all go crazy, then you've endangered the airport. But so you're saying the same thing should apply to an aircraft. It's the thing and the people in it, you're saying. Yes, I would argue that this deals with human safety. But even if you're just talking about the airplane itself, the aircraft itself, if you assume that that's what it means, I'm not sure that it does. But again, if you assume that that's what it means, in this case, we know that as a direct and proximate result of what he did, this plane had to deviate from a well in the back of their airplanes, and to turn back, thus not only impacting the potential for a midair catastrophe, because you have very agitated pilots, obviously, who think that there is a riot going on in the back of their airplane, who must then change course abruptly, not only impacting that airplane, but every other aircraft in the vicinity, which then must be rerouted so that they don't run into it, because they're not supposed to be there. They're supposed to be going one way and not back the other way. And plus, they have to make a turn. And so you all you have that potential of a problem when you're supposed to have calm pilots. You've got very agitated pilots who are very concerned. And I – exactly, Your Honor. I would agree wholeheartedly in that this is about endangering or increasing the potential for harm. So I wonder why we even need to get to the question of whether there is – whether endangering the aircraft means the people or the airplane, because in this case, even if you're talking about just the metal skin of the airplane, you have a situation where we know as a matter of fact, it's not indisputed, that this plane had to deviate from its flight path, thereby, unless you're living in fantasy land, increasing the potential, even if it's microscopically, increasing the potential for danger to the airplane, making these abrupt, unanticipated maneuvers in the middle of the sky. And as Judge McEwen put out, this is not a Piper Cub. And I agree, Your Honor. We don't even really need to get to that question in this case. But knowing that, I could argue that the guideline doesn't mean that the standard that the defense is putting forth, that somehow the government has to prove that the physical, actual aircraft is endangered versus somehow – Well, it seems to me that it would be somewhat nonsensical for Congress to be more concerned about the airplane than it is the people or the airplane. Well, exactly. I mean, that doesn't make any sense to me. It's bad policy. And I think Congress understands that if the airplane goes down, so goes the people. Exactly. And I think that's really what it means when it says the aircraft or the airport. Thank you. You've exceeded your time. I will just say this, that, you know, these enhancements are pretty significant. And we wouldn't even be here if the government had put on some evidence on the pilot about, you know, or from the FAA or whatever about danger to the aircraft and the flight pattern. I just say that generally because we get in here and then we're arguing over what did they mean and what does the evidence show. So I just say that as a general piece of friendly advice when we get up here. And we'll – you know, we're going to have to interpret the guideline in the face of the evidence in front of us, so. It also would have been helpful if the district judge made some kind of finding on it, wouldn't it? Which, apparently, you didn't. You didn't encourage him to do it. In retrospect, that's all. Yes. Okay. Thank you. Of course, we all love to – these are all retrospective, of course. Every case is retrospective. Second guessing, right? Yes, Mr. – did you have any rebuttals? We actually had a lot of rebuttals. I suppose it doesn't matter if that's a question. It's a question for me. No, thank you very much to both counsel for your arguments. Very helpful. The case of United States v. Salvador Gonzalez is submitted and we're adjourned for the morning.
judges: Hug, McKeown, Ezra